**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| MATTHEW M. LAVIN, *individually and on behalf of all others similarly situated*, | ) ) ) | |
| Plaintiff, | ) ) | Case No: _____ |
| v. | ) ) | CLASS ACTION COMPLAINT |
| ROBINHOOD FINANCIAL, LLC ROBINHOOD SECURITIES, LLC ROBINHOOD MARKETS, INC., CITADEL SECURITIES, LLC, CITADEL ENTERPRISE, AMERICAS LLC, and MELVIN CAPITAL MANAGEMENT, LP, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Matthew M. Lavin ("Plaintiff"), based on information and belief, alleges as follows on behalf of himself and all members of the general public similarly situated:

**NATURE OF THE CASE**

1.      This is a class action based on Defendants' intentional and willful removal of certain securities, including but not limited to "AMC" and "GME," from their trading platform, thereby depriving retail investors of the ability to invest in the free market.

**PARTIES**

2.      Plaintiff Matthew M. Lavin is a citizen of the Commonwealth of Virginia, residing in Great Falls, Virginia within the Eastern District of Virginia.

3.      Defendant Robinhood Financial LLC is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. It is a wholly-owned subsidiary of Robinhood Markets, Inc. Robinhood Financial LLC is registered as a broker-dealer

with the U.S. Securities & Exchange Commission ("SEC"). Defendant Robinhood Financial LLC acts as an introducing broker and has a clearing arrangement with its affiliate Defendant Robinhood Securities, LLC.

4.      Defendant Robinhood Securities, LLC is a Delaware corporation with its principal place of business at 500 Colonial Center Parkway, Suite 100, Lake Mary, Florida 32746. It is a wholly owned subsidiary of Defendant Robinhood Markets, Inc. Defendant Robinhood Securities, LLC is registered as a broker-dealer with the SEC. Defendant Robinhood Financial LLC acts as a clearing broker and clears trades introduced by its affiliate Defendant Robinhood Financial.

5.      Defendant Robinhood Markets, Inc. is a Delaware corporation with its principal place of business at 85 Willow Road, Menlo Park, California 94025. Defendant Robinhood Markets, Inc. is the corporate parent of Defendants Robinhood Financial LLC and Robinhood Securities, LLC.

6.      Robinhood Financial LLC, Robinhood Securities LLC, and Robinhood Markets, Inc. are referred to collectively as "Robinhood."

7.      Defendant Citadel Securities, LLC is a Delaware corporation with its principal place of business at 425 Park Avenue, New York, NY 10022.

8.      Defendant Citadel Enterprise Americas, LLC is a Delaware corporation with its principal place of business at 131 South Dearborn Street, Chicago, IL 60603.

9.      Citadel Securities, LLC and Citadel Enterprises Americas, LLC are referred to collectively as "Citadel." Citadel is the largest customer of Robinhood.

10.     Defendant Melvin Capital Management LP is a Delaware corporation with its principal place of business at 535 Madison Avenue, 22nd Floor, New York, New York, 10022.

Citadel Enterprise Americas, LLC is a hedge fund that owns all or part of Melvin Capital Management LP.

11.     Each of the Defendants had actual and/or constructive knowledge of the acts of the other Defendants as described herein, and ratified, approved, joined in, acquiesced in, and/or authorized the acts of the other, and/or retained the benefits of the said acts.

## JURISDICTION AND VENUE

12.     This Court has Federal Question Jurisdiction pursuant to 28 U.S.C. § 1331 because the case arises under the laws of the United States.

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367, which gives the district court supplemental jurisdiction over state law claims.

14.     This Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate claims of all members of the proposed class are in excess of $5 million, exclusive of interest and costs, and there are more than 100 putative class members. Many members of the proposed class are citizens of a state different from Defendants.

15.     Pursuant to 28 U.S.C. § 1391, venue is proper in this Court because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

16.     This Court has personal jurisdiction over Defendants because they are authorized to do business and do conduct business in Virginia, and because they have specifically marketed, advertised, and made substantial sales in Virginia, and have sufficient minimum contacts with this state and/or sufficiently avail themselves of the markets of this state through their promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

## FACTUAL ALLEGATIONS

17.     Robinhood is an online brokerage firm. Its customers place securities trades through the firm's website, by using a web-based application (or "app"). Robinhood permits customers to purchase and sell securities, including futures contracts.

18.     According to its "About Us" section on its website, Robinhood believes that the financial system should be built to work for everyone. About Us, ROBINHOOD (2021), https://robinhood.com/us/en/about-us/ (last visited January 29, 2021).

19.     Robinhood prides itself as being "… on a mission to democratize finance for all." *Id.*

20.     Citadel is one of the largest clients of Robinhood.

21.     Citadel reloaded their short sale positions and invested in Melvin Capital, Management LP, which had large short positions in GameStop Corp. ("GME"), before they told Robinhood to stop trading stocks in GME.

22.     On or around January 11, 2021, stocks in GME began to rise.

23.     On or around January 26, 2021, stocks in AMC Entertainment Holdings, Inc. ("AMC") began to rise.

24.     At this time, Robinhood allowed retail investors to trade AMC and GME (the "Stocks") in the open market.

25.     On or about January 27, 2021, in an effort to restrict the free market, Robinhood deprived its individual investor customers of the ability to transact on its platform for certain securities, including the Stocks.

26.     Robinhood also restricted investors from performing any action other than selling/liquidating their holdings in these equities.

4

27. Meanwhile, hedge funds and institutional investors were allowed to continue to trade as normal.

28. Robinhood's actions were done purposefully and knowingly to manipulate the market for the benefit of people and financial institutions who were not Robinhood's customers, including hedge funds and institutional investors.

29. In sum, Robinhood completely blocked retailer investors from purchasing the Stocks for no legitimate reason, thereby depriving retailer investors from the benefits of Robinhood's services.

30. The Financial Industry Regulatory Authority ("FINRA"), which governs brokers like Robinhood, espouses rule 5310 regarding "Best Execution and Interpositioning." Rule 5310.01 requires that Robinhood "must make every effort to execute a marketable customer order that it receives promptly and fully." By failing to respond at all to customers' placing timely trades—and outright blocking customers from trading a security—Robinhood has breached these, among other, obligations and caused their customers substantial losses due solely to their own negligence and failure to maintain adequate infrastructure.

31. On January 27, 2021, Plaintiff used the Robinhood app to place a market order to buy GME, which was executed. On the morning of January 28, 2021, Plaintiff attempted to use the Robinhood app to place a market order to buy additional GME, but Robinhood rejected and/or restricted Plaintiff, as well as other retail investors, from further trading GME.

32. On the morning of January 28, 2021, Plaintiff used the Robinhood app to place a market order to buy AMC. Robinhood notified Plaintiff that his order had been cancelled on January 28, 2021 at 9:21 a.m.

33.     Thus, Plaintiff, like all others similarly situated, lost out on all earning opportunities.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings claims pursuant to Federal Rule of Civil Procedure 23 on behalf of the following classes, as defined below:

**National Class**

**All Robinhood customers within the United States who were not able to execute trades on GME and/or AMC after Robinhood knowingly, willfully, and purposefully removed it completely from their platform.**

**Virginia Class**

**All Robinhood customers within the Commonwealth of Virginia who were not able to execute trades on GME and/or AMC after Robinhood knowingly, willfully, and purposefully removed it completely from their platform.**

35.     The Class is so numerous that joinder of all individual members (individually, "Class Member" or collectively, "Class Members") in one action would be impracticable, given the expected Class size and modest value of individual claims.

36.     There are more than 10 million Robinhood customers.

37.     Class Members can be identified through Defendants' records.

38.     Plaintiff's claims are typical of the claims of the Class Members, as they are based on the same legal theory and arise from the same unlawful conduct. There are common questions of law and fact affecting Class Members, which common questions predominate over questions that may affect individual members. These common questions include, but are not limited to:

a)     Whether and to what extent Defendants have deprived Class Members of earning opportunities;

b)      Whether and to what extent Defendants have deprived Class Members of their right to freely trade on the open market;

c)      Whether and to what extent Defendants conspired to deprive Class Members of their ability to freely trade;

d)      Whether Defendants violated the Sherman Antitrust Act of 1890;

e)      Whether Defendants breached their fiduciary duties to their customers by failing to provide adequate access to financial services;

f)      Whether Defendants were unjustly enriched by their conduct;

g)      Whether Defendants are in breach of their contracts with Class Members in connection with their failure to provide financial services;

h)      Whether Defendants violated consumer protection laws in failing to disclose that its services would not include the ability to trade certain securities, including the Stocks, for substantial periods of time;

i)      Whether Class members are entitled to actual damages, statutory damages, and/or punitive damages as a result of Defendants' wrongful conduct;

j)      Whether Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of their lost earning opportunities; and

k)      Whether or not Class Members are entitled to Declaratory Relief.

39.     Plaintiff will fairly and adequately represent the Class Members. Plaintiff has no interests that conflict with the interests of Class Members. Plaintiff has retained counsel experienced in handling class actions. Neither Plaintiff nor his counsel have any interests that might cause them not to pursue these claims vigorously.

40. This action should be maintained as a class action because the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual members that would establish incompatible standards of conduct for the parties opposing the Class.

## COUN I – UNLAWFUL COMBINATION AND CONSPIRACY IN RESTRAINT OF TRADE IN VIOLATION OF SECTION 1 OF THE SHERMAN ACT
### (All Defendants)

41. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

42. On information and belief, the Defendants combined, conspired, or contracted to contemporaneously decide upon and enact a coordinated prohibition on the purchase of shares of the Stocks by Plaintiff and Class Members.

43. Defendants have prohibited and continue to prohibit purchases of shares of the Stocks by Plaintiff and Class members in an unreasonable restraint of trade in the stock market. Despite prohibiting purchases of shares of the Stocks, Defendants have continued to allow Plaintiff and Class Members to sell shares of the Stocks.

44. As a result of Defendants' contract, combination, or conspiracy, the unreasonable restraint of trade in the stock market has caused injury to Plaintiff and Class members by prohibiting their purchase of shares of the Stocks. Despite this prohibition, Robinhood allows Plaintiff and Class members to sell shares of the Stocks on its platform.

## COUNT II – ATTEMPTED MONOPOLIZATION OF THE STOCK MARKET IN VIOLATION OF SECTION 2 OF THE SHERMAN ACT
### (All Defendants)

45. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

46. By prohibiting Plaintiff and Class Members from purchasing the Stocks but not from selling the Stocks, Defendants engaged in and continue to engage in exclusionary conduct

that is deleterious to consumers and to the anticompetitive benefit of the Defendants. Defendants engaged in and continue to engage in anticompetitive conduct.

47.     Through the continued anticompetitive conduct of excluding Plaintiff and Class Members from the stock market as competitors by prohibiting Plaintiff's purchase of the Stocks, Defendants manifested and continue to manifest a specific intent to monopolize. Defendants' coordinated prohibition of Plaintiff's and Class Members' purchase of the Stocks demonstrates Defendants' specific intent to monopolize the stock market.

48.     Upon information and belief, Defendants collectively control a majority share of trading within the stock market. Defendants' coordinated prohibition of Plaintiff's and Class members' purchase of the Stocks is likely to increase Defendants' market share within the stock market. As a result, Defendants' anticompetitive conduct poses a dangerous probability of achieving monopoly.

## COUNT III – BREACH OF CONTRACT
### (Robinhood Defendants)

49.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

50.     In order to use the Robinhood trading platform, a potential customer must enter into the Customer Agreement with Robinhood.

51.     Plaintiff and all Class Members did enter into a Customer Agreement with Robinhood.

52.     Robinhood breached its Customer Agreement by, among other things, failing to disclose that its platform was going to randomly pull profitable stocks from its platform; that Robinhood failed to provide adequate explanation to their customers; that Robinhood knowingly put their customers at a disadvantage compared to customers who used other trading apps; that Robinhood failed to provide access to its own financial incentives to pull certain securities

including the Stocks; that Robinhood prohibited plaintiffs from performing in a timely manner (or at all) under the contract; that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to exercise trades and actions requested by customers.

53.     As such, Robinhood breached its Customer Agreement with Plaintiff and Class Members.

54.     Robinhood's failure to perform and its breaches of the Customer Agreement resulted in damages and losses to Plaintiff and Class members and continues to expose them to harm because Robinhood continues to fail to perform under the Customer Agreement. These losses reflect damages to Plaintiff and Class Members in an amount to be determined at trial or separate proceedings as necessary.

## COUNT IV – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (Robinhood Defendants)

55.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

56.     Plaintiff and the Class Members entered into the Customer Agreement with Defendant Robinhood to open a Robinhood trading account. They agreed to Robinhood's Terms and Conditions by using Robinhood's website and trading platform.

57.     Plaintiff and the Class Members fulfilled their obligations under these contracts by adhering to their terms and using Robinhood's trading services through its website and trading platform.

58.     Robinhood was obligated to provide the trading services required under those contracts at all times, including but not limited to trades for the Stocks.

59.     When initially signing up for Robinhood, Plaintiff and all those similarly situated could and most actually did trade the Stocks.

60.     Robinhood unfairly interfered with the rights of Plaintiff and members of the Class to receive the benefits of the Customer Agreement by, among other things, (i) failing to provide services necessary to carry out a trade; (ii) failing to provide certain trading services whatsoever; (iii) failing to inform individuals in a timely member of the drastic changes in trading abilities; and (iv) prohibiting plaintiffs from buying the Stocks for Robinhood's own pecuniary interest and not disclosing those interest to Plaintiff and all Class members.

61.     Robinhood's conduct has caused Plaintiff and members of the Class harm, losses, and damages. These losses reflect damages to Plaintiff and members of the Class in an amount to be determined at trial or separate proceedings as necessary.

### COUNT V – NEGLIGENCE
### (Robinhood Defendants)

62.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

63.     Robinhood had a duty to exercise reasonable care in providing trades on the free, open market for its customers.

64.     Robinhood unlawfully breached its duties by, among other things, (i) removing the Stocks without notice from its trading app; (ii) failing to provide financial services related to the Stocks; (iii) failing to notify customers in a timely manner of the Stocks' "blackout."

65.     Robinhood's conduct as set forth in this Complaint was want of even scant care, and its acts and omissions were and continue to be an extreme departure from the ordinary standard of conduct. Its actions breach any duty of care to its customers, but are also inconsistent with the standard of care expected from similar firms in the open market.

66.     Robinhood essentially abandoned its customers altogether by pulling the Stocks, a standard of care so far below what is required for a business engaging in time sensitive trading services that it amounts to a complete abandonment of its duties.

67.     Robinhood's grossly negligent and wrongful breaches of its duties owed to Plaintiff and members of the Class proximately caused losses and damages that would not have occurred but for Robinhood's gross breach of its duty of due care. These losses reflect damages to Plaintiff and members of the Class in an amount to be determined at trial or separate proceedings as necessary.

## COUNT VI – BREACH OF FIDUCIARY DUTY
### (Robinhood Defendants)

68.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

69.     As a licensed provider of financial services, Robinhood at all times relevant herein was a fiduciary to Plaintiff and Class members and owed them the highest good faith and integrity in performing its financial services on their behalf. Robinhood also acted as a fiduciary to each and every customer who agreed to the Customer Agreement.

70.     Robinhood breached its fiduciary duties to Plaintiff and Class members by, among other things, failing to disclose in a timely manner that its platform was going to remove the Stocks; actually removing the Stocks; removing the Stocks for its own pecuniary benefits; that Robinhood failed to provide access to its financial services in a timely manner; that Robinhood failed to comply with all applicable legal, regulatory, and licensing requirements; and that Robinhood failed to exercise trades and actions requested by customers in a complete and timely manner (also required by FINRA Rule 5310).

71.     Robinhood's conduct has caused Plaintiff's and Class Members' harm, losses, and damages and continues to expose them to harm because Robinhood continues to breach its

fiduciary duties. These losses reflect damages to Plaintiff and Class Members in an amount to be determined at trial or separate proceedings as necessary.

**COUNT VII – COMMON LAW CONSPIRACY**
**(All Defendants)**

72.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

73.     Upon information and belief, Defendants knowingly and intentionally agreed to prohibit the purchase of shares of the Stocks on Robinhood's trading platform for the pecuniary benefits of Defendants. This agreement and subsequent concerted action comprise a common scheme among Defendants.

74.     This common scheme represents a combination for the purpose of accomplishing the unlawful act of the restraint of free trade in the stock market by concerted action for the pecuniary benefits of Defendants.

75.     In furtherance of this unlawful agreement, Defendants committed the tortious act of breaching fiduciary duties owed to Plaintiff and Class members.

76.     Defendants' acts in furtherance of this unlawful agreement has caused Plaintiff's and Class members' harm, losses, and damages. These losses reflect damages to Plaintiff and Class members in an amount to be determined at trial.

**COUNT VIII – BUSINESS CONSPIRACY UNDER VIRGINIA CODE § 18.2-499**
**(All Defendants)**

77.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

78.     Virginia Code § 18.2-499 makes it unlawful for: "Any two or more persons [to] combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means

13

whatever or (ii) willfully and maliciously . . . preventing or hindering another from doing or performing any lawful act . . . ."

79.    As alleged above, Defendants combined, agreed, mutually undertook and acted in concert together for the purpose of willfully and maliciously injuring Plaintiff and Class Members and preventing them from performing a lawful act of transacting shares of the Stocks, in order to further their own financial interests.

80.    Defendants knew that their scheme would harm Plaintiff and Class Members by denying them earnings opportunities, and that Robinhood's participation in the scheme would breach its fiduciary duties owed to Plaintiff and Class members.

81.    Defendants' acts in furtherance of this unlawful agreement has caused Plaintiff's and Class Members' harm, losses, and damages. These losses reflect damages to Plaintiff and Class Members in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Matthew M. Lavin, individually and on behalf of the proposed Class, prays for relief as follows:

a)  For an Order certifying this action as a class action and appointing Plaintiff and his Counsel to represent the Class;

b)  Enter an award for Plaintiff to be determined;

c)  Enter an award of attorneys' fees and costs;

d)  Enter an award for punitive damages for the willful, wanton, and reckless behavior of Defendants; and

e)  Such other and further relief as this Court may deem just and proper.

14

## **JURY DEMAND**

Plaintiff respectfully demands a trial by jury of all matters so triable.

Dated:  January 29, 2021                                    Respectfully submitted,

                                                            _____
                                                            Parker J. Lavin (VSB No. 75106)
                                                            ROBERTS TATE, LLC
                                                            2487 Demere Road, Suite 400
                                                            St. Simons Island, GA 31522
                                                            Tel: 912.638.5200
                                                            Fax: 912.638.5300
                                                            Email: plavin@robertstate.com

                                                            **Counsel for Plaintiff Matthew M. Lavin**